## DECEMBER TERM, 1843.

### WHITWELL CRAFT *v.* CHARLES K. BULLARD.

C. conveyed two negroes to B., by a bill of sale, absolute and unconditional upon its face ; *held*, that it was competent for C. to prove by parol, that the bill of sale was intended as a mere mortgage to secure B. a sum of money.

The only relief a court of equity can grant a mortgagor upon his mortgage, is to allow him to redeem his mortgaged property, upon a bill properly shaped for that purpose.

C. filed his bill against B., alleging that B. had obtained a judgment at law upon a note, to secure the payment of which, he had conveyed B. two negroes, averring that B. had been in possession of one ever since the sale, and prays for an account of his hire, and of his value, and for an injunction against the judgment at law ; *held*, that upon such a bill the injunction could not be retained.

A mortgagor has no right to force the mortgagee to take the property at an assessed value, and cannot call for an account upon any such principle.

A mortgagee, who sells a portion of the mortgaged property, must account for the value of the property sold, and if slaves, for their hire.

THE bill states, that on the 26th day of November, A. D. 1830, the complainant became indebted to the defendant in the sum of nine hundred and seventy-nine dollars ; for which he executed two notes, one for four hundred and eighty-three dollars and ninety-eight cents, and the other for four hundred and ninety-five dollars and sixty-five cents. And at the same time he executed to the defendant a bill of sale for two negroes, named Henry and Charles, worth fifteen hundred dollars ; which bill of sale, according to the complainant's recollection, expressed, that in case the notes were paid at maturity, the bill of sale was to be cancelled and destroyed, or in case of failure, that the negroes were to be the absolute property of the defendant ; that, in accordance with that agreement, he delivered one of the negroes into the possession of the defendant, who has had him ever since, and still has him in possession ; that the notes were not paid at maturity, suit was brought upon them, to the fall term of the Circuit Court of Carrington county, for the year 1832, and judgment had thereon in the year 1834, for twelve hundred and seven dollars and eighty-four cents and costs.

The complainant alleged, that he employed counsel to defend the suit at law, who filed pleas to the action, but afterwards with-

drew them, informing him that his defence existed in equity ; that being about to prosecute his suit in chancery, the agent and attorney of the defendant proposed to the attorney in the suit at law of the complainant, that if he would pay five hundred dollars of the judgment, and relinquish his equitable defence, they would compromise the suit, and put an end to the litigation ; that this five hundred dollars and the negro boy, were to be taken by the defendant in full satisfaction and payment of the notes and judgment, to which arrangement the complainant assented. That the defendant has had the hire of the negro for twelve years, and that his hire, during that period, was worth fourteen hundred dollars, and that the negro himself was worth one thousand dollars, and that if an account was taken, the defendant would be indebted to him ; that soon after the compromise, to the astonishment of the complainant, execution was issued upon the judgment, which, upon application to the attorney at law of the defendant, was stayed in writing ; that afterwards, still another execution was sued out upon the judgment, which he employed counsel to enjoin, who filed a bill for that purpose, obtained the injunction, but omitted to prosecute the suit, whereby the bill was dismissed ; but that the attorney employed by him falsely informed him that the injunction had been perpetuated.

That he had paid the defendant one hundred and twenty-five dollars, and that some of the articles for which the original notes were given had never been received by him, of the value of twenty-four dollars ; that the bill of sale, above spoken of, was given as a mere security for the notes ; that an execution upon this judgment was now in the hands of the sheriff of Smith county, who was seeking to enforce it : the bill, therefore, prayed, that Bullard might be made a defendant ; that an injunction might be granted, until the bill could be heard; that an account might be taken of the value of the boy, and of his hire, and the interest thereon ; and of the articles which had never come to hand, for which the original notes were given, and the one hundred and twenty-five dollars; and that a decree accordingly might be given, perpetuating the injunction, and such other and further or different relief be given, as in equity would be just.

Upon this bill, the Chancellor granted an injunction.

The defendant in April, 1843, answered the bill.

He admitted the indebtedness of the complainant to him, as alleged in the bill, but states, that he executed two bills of sale, instead of one ; and denies that the two negroes, respectively sold by the separate bills of sales, were worth fifteen hundred dollars ; but states, that they were estimated at four hundred dollars each, in the bills of sale ; he denies that the bills of sale were conditional, but states, that they were absolute on their face ; but admits, that there was a verbal understanding to the effect, charged in the bill ; but that the notes were not paid at maturity, and that the verbal agreement " *was of no effect.*" He admits the delivery of one of the negroes to him, which he says, he sold in 1832, for five hundred dollars, for which sale he had to pay his agent, who effected it, $37·50, whereby he only received $462·50. He admits the suit at law and judgment, as stated in the bill.

He expresses his ignorance of the compromise set forth in the bill, and denies the authority of his agent to make such, if any was made, and states that he has never ratified it in any way ; he denies receiving any hire for the negro he received and sold, and denies his accountability for it. He exhibits an account with his answer of an indebtedness, by the complainant, of one thousand and ninety-five dollars, being the balance due after deducting from the judgment the price obtained for the negro ; he admits the payment of the $125 ; admits the failure of the $24 worth of goods, to come to the hands of the complainant ; " admits that said bill of sale for said negroes was intended as a security for the payment of said notes at maturity, but charges, that there was a verbal understanding, that, in the event of the payment of said notes at maturity, the said bills of sale should be null and void, otherwise in full force and effect."

The answer further stated, that the complainant and the defendant, on the 18th day of December, 1841, accounted together of all the matters in controversy between them in this suit, and that at that time the complainant admitted he owed the defendant $1052·50 ; that he then paid him $125, and entered into a written agreement, which was filed with the answer, to pay the remaining

Craft v. Bullard.

$927 in the Bank of Mobile, Alabama, on the first of March, 1842, in default of which, he stipulated to pay the whole amount of the judgment and interest.

The following is the agreement last referred to in the answer.

" State of Mississippi, Smith county.

" This article of agreement, made and entered into, between C. K. Bullard of the first part, and Whitwell Craft of the second, witnesseth, that whereas the said C. K. Bullard holds a judgment, rendered on the 19th day of May, A. D. 1834, for $1207·84 cents, in the county of Covington, and State aforesaid, in which he agrees to receive nine hundred and twenty-seven dollars, in full discharge for the amount of the plaintiff's money in the above judgment, provided the said Whitwell Craft will deposit to the credit of the said Bullard the above sum of $927, in the Mobile Bank of Alabama, on the first day of March, 1842, with interest ; but in case the said Craft should deposit the above sum on or before the first of February, A. D. 1842, then no interest is to be charged. But if the said Craft should fail to deposit the above sum of $927, at the time above mentioned, and at the place aforesaid, then he binds and obligates himself to pay the full amount of the above-mentioned judgment, both principal and interest, without further defence or delay of any kind whatever. In witness whereof, we have hereunto set our hands and seals, our seals being a scrawl, this the 18th day of December, 1841.

" Attest.                              " Whitnell $+$ Craft. L. S.

" James C. Wakes,             " C. K. Bullard."

" Thomas Williamson."

Upon this state of the pleadings, a motion was made by the defendant to dissolve the injunction.

*Adams* and *Freeman*, for the defendant, in behalf of the motion.

This bill is filed to enjoin an execution at law. The bill shows that the complainant had his defence at law, to wit, that the notes levied on were paid in part by the delivery to plaintiff at law of a slave, and also by the services of said negro slave for several years. The record shows that he made his defence below by filing his pleas,

and, after a delay of several terms, withdrew the same voluntarily. Under these circumstances, he cannot now be heard in equity. His only reason for coming into this Court is, that his counsel told him that his defence was in equity. The mistakes of counsel cannot give jurisdiction to this Court.

The bill also admits that complainant once enjoined said execution by injunction from this Court, but that the same was dissolved and suit dismissed for want of prosecution. This is also charged to the neglect of counsel.

The answer of defendant is full, and denies all the law and equity of the case. It also shows a written agreement of complainant, entered into after the judgment was obtained to pay the money in controversy. Under these circumstances, and especially after all the aggravating delays shown by the record in this case, the Court can scarcely hesitate to dissolve the injunction.

*Mayes* and *Clifton*, for complainant.

The complainant, being indebted to the defendant in upwards of $900, executed his two notes therefor — the last due 1st November, 1831, and made to him, at the same time, a bill of sale for two negroes, Charles and Henry, and gave him possession of Charles, whom he sold in June, 1832, about seven months after the last note was due.

The defendant, in his answer, admits that there was a verbal agreement, that if said notes were paid at maturity, the bills of sale should be void. It is not necessary to embody a condition like this in the bill of sale, to make it a mortgage. Parol evidence is competent to prove it, much more the admission of the party. *Strong v. Stewart*, 4 Johns. Ch. R. 167.

Wherever it appears to have been the intention of the parties, that the delivery of the property was only a security for the debt, it amounts only to a mortgage. *Reed v. Lansdale*, Hardin, Ky. Rep. 6.

The transaction between these parties equity pronounces to be a mere mortgage, by the complainant, Craft, to the defendant, to secure the debt due.

It being a mortgage, Bullard had no right to sell the mortgaged

property, in any event, without giving notice to Craft to redeem. It is not pretended this was done.   The sale of the boy Charles, being unauthorized, Bullard occupies the same attitude as if he still retained him, and the rights of the parties in this controversy will be adjudged precisely as if this were a bill brought by Craft to redeem. In that case, an account of the hire of the negro and the debt due, with interest, would be taken, and if a balance were due to Bullard, Craft would be required to pay it, or the negro would be sold to raise it.   If a balance were due to Craft, after allowing hire, the negro would be ordered to be delivered back to him, and the bill of sale cancelled.

A mortgagee in possession is always bound to account for the profits.   *Ballengir* v. *Morley*, 1 Bibb, 195.

The mortgagee, in possession of a slave mortgaged, shall account for the hire.   Hardin (*supra*), 6 ; 3 Bibb, 18.   See also 4 Howard, 579 ; 6 Monroe, 122.

In this case, the defendant, Bullard, having sold the negro without authority, is bound to account for the hire, and for his present value, because, if he had not exceeded his powers by the sale, the negro would be at hand to be delivered up, and the Court will not permit him to take advantage of his own wrong, by giving credit for the price received, and interest.

By examination of the papers, it will be seen that the complainant is an illiterate man — can neither read nor write.   The court of chancery is faithful to the impulses of our common nature, by guarding and protecting the rights of such, whenever it can do so without violating established principles.   Invoking this benign principle for this case, it is apparent Bullard cannot, conscientiously, claim a dissolution of the injunction, and the collection of this judgment.

The courts say, what is very obvious, that it is often a nice and difficult question, to determine whether a writing is a mortgage or conditional sale, and they have, in all doubtful cases, shown an inclination to treat them as mortgages rather than conditional sales ; and, wherever a transaction is infected with usury or oppression, it is consistent with the established rules of evidence to permit proof, that its real character is even different from what it purports to be ; and hence it is laid down as a general rule in such cases, that where

a conveyance is intended as a security for money, whether this in-
tention appears from the deed itself, or from other circumstances, it
is *always* considered in equity as a mortgage, and redeemable, even
although there be an *express agreement* of the parties, that it shall
not be redeemed, or that the right of redemption shall be confined to
a. particular time.   *Skinner* v. *Miller*, 5 Lit. R. 86 ; Butler's
Notes to Coke Lit. 205 a ; *Edrington* v. *Harper*, 3 J. J. Marsh.
354.   See also *Lewis* v. *Robards*, 3 Monroe, 409.

It is contended for Craft, that the hire of the negro Charles, and
the $125 cash paid, together, discharge Bullard's debt and interest ;
and at all events, they, together with the value of the negro, more
than do this ; and that the agreement to pay, filed by Bullard, with
his answer, as exhibit No. 3, was an agreement without considera-
tion, and void ; and that no court of chancery, under the facts, and
considering the disadvantage the defendant's want of literature sub-
jected him to, would enforce it.   We think we have shown enough
to induce the Court to refuse the motion to dissolve.

CHANCELLOR.   This is a motion to dissolve an injunction stay-
ing a judgment at law.

The complainant charges in his bill, and it is distinctly admitted
by the defendant in his answer thereto, that the bill of sale from the
former to the latter conveying the two slaves, Henry and Charles,
although absolute and unconditional upon its face, was, in point of
fact, intended as a mere security for the payment of the money for
which the judgment at law was obtained.   I can have no doubt,
therefore, that the transaction between them amounted to nothing
more than an ordinary mortgage, and that it was in no sense a con-
ditional sale of the slaves.   It is well established, upon both prin-
ciple and authority, that an absolute deed may be converted into a
mortgage, by parol evidence, showing that it was intended as a mere
security, and that the grantor will then be let into all the rights and
privileges of a mortgagor.   Whether the complainant presents
himself in such shape as to entitle him to these privileges, is now a
proper question for examination ; because, if the complainant would
not be entitled to relief under his bill, upon final hearing, it is clear
the injunction ought not to be retained.   The only ground that I

Craft v. Bullard.

can perceive the complainant has for relief in the premises, grows out of his character *as mortgagor*. The only relief, that I am advised of, which this Court can grant a mortgagor against his mortgagee, is that of allowing him to redeem the mortgaged property, upon a bill properly shaped for that purpose. Here the bill states, that one of the slaves was placed in the possession of the defendant, and yet remains there, so far as the complainant is advised ; and then prays, not for a redemption of the slave, but for an account of his hire and of his value, and for a perpetual injunction against the judgment at law. The right of a mortgagor to call the mortgagee to account, is incident to, and, as a general rule, can only arise under, a bill for redemption. *Postlewaite* v. *Blythe*, 3 Mad. Rep. 242 ; *Goldsmith* v. *Asburn*, 1 Edw. Ch. Rep. 560. A mortgagor has no right to force the mortgagee to take the property at an assessed value, and cannot call for an account upon any such principle. According to this view of the case, if nothing more had appeared than what is shown by the complainant's bill, I should have discharged the injunction ; but the defendant discloses, by his answer, the fact, that he has since sold the slave that went into his possession, and thus put it out of his power to surrender him : this entitles the complainant to call for the value of the slave, and, I think, cures what would otherwise have been a fatal defect in the structure of the bill. The complainant is clearly entitled to the slave, or his value, as well as an account for his hire, by way of set-off against the payment of the mortgage-money. I give no opinion as to the effect of the subsequent agreement between the parties, as to the mode of settling the difficulty between them. Whether it is to be regarded as fixing the amount to which the complainant is entitled as a credit for the hire and value of the slave, is a question that will properly arise upon taking the account.

Let the motion to dissolve the injunction be overruled.